Your Honor, this is one of those social security cases that have occurred quite a bit. In this case, it involves two different administrative decisions by two different judges by the same plaintiff claiming it. Mr. Moore first applied for disability in 2007. A hearing was held on his first claim and Judge Leopold was the Administrative Law Judge who found adverse to Mr. Moore. Mr. Moore asked for review by the Appeals Counsel and Appeal Counsel granted that review and remanded his case back to the Administrative Law Judge for additional findings, which I set out in my brief. The second hearing occurred in 2012 by Judge Allen. Now, significant to these two Administrative Law Judges is that in finding the severe impairments, the second Administrative Law Judge found impairments that were different than the impairments found by Judge Leopold. The only common impairment, severe impairment, found by Judge Allen that was in the decision by Judge Leopold was anxiety. And of course, Judge Allen denied Mr. Monroe's claim for disability. The basic argument in these cases, in this case, involves the two decisions. And I think the most common issue involving all of my issues in this case, I listed five, is whether or not the doctrine of preclusion applies to the second hearing. And that's where we are in this case. The law in this circuit, the recent law in this case, based on the Carter case, made a determination, made a ruling that any findings or rulings by a prior Administrative Law Judge preclude from being re-litigated in the subsequent hearing. But wasn't that first decision vacated? Yes, sir. It was vacated at the Pierce Council that was sent back. And some examinations were made, and then it came on for hearing before Judge Allen in 2012. Well, if it was vacated, why would we give any effect to it? Because, as the development of case law is, particularly in the Carter case and some other cases, is that the doctrine of res judicata applies in this circuit. Now, some courts use res judicata, and some use collateral stopper. But the Carter decision versus Astru used the doctrine of res judicata applies in this circuit. And it's our contention that it applies in this case, because we have the same claimants, the same parties, the same issues, the same claims. And therefore, it applies. And if it does apply, then it would preclude the re-litigation of the severe impairments as found by Judge Leopold. As I said, the only common severe impairment found by Judge Allen that was also found in Judge Leopold's opinion was anxiety. The rest of the severe impairments as found by Judge Leopold were basically almost disregarded or not considered or not looked at. And, as I said, that's common in all of my issues. But wasn't that decision vacated before it became final, the first decision? The Pierce Court decision was sent back. Right. Before it ever became final. It was vacated before it ever became final and was sent back or re-heard. Well, that seems to be the issue. And I think the Carter court kind of addressed that about what's a final determination. And in reading Carter, at least my understanding is, my interpretation is that the severe impairments as found by Judge Leopold were based on medical evidence. And they found these impairments were severe. And that decision was remanded for them to make additional findings. And you would assume that they would use the same impairments that had been found by Judge Leopold in making the corrections that was ordered by the Pierce Counsel. But Judge Allen made a completely different findings as to what the severe impairments were. And that's the issue in this case. Basically, we're saying that if Judge Allen had considered all these impairments, severe impairments, as found by Judge Leopold, he's required to do that. And then it's our opinion that the decision would have been different. Mr. Davis, can you just unpack that a little bit for us in terms of the thing decided? Which you're saying that something was decided that the remand, if followed correctly, would not have disturbed that finding. Yes, sir. Correct? Yes, sir. So what was the thing decided that the remand didn't touch or shouldn't have touched? That's the question. The fact that these symptoms were severe and that was listed in both in Judge Leopold. Judge Leopold said that they were severe. Yes, sir. Yes, sir. So now, upon remand, what was the task of the remand? Well, the task of the remand to do what? And I've got it at page three. I'll start with statements to find that concerning special techniques used to determine a nation's severity of mental impairments. Just tell us, what was he supposed to do when he went back? He was supposed to, particularly dealing with the mental limitations, he was supposed to make a determination how the severe impairments, as found by Judge Leopold, affect his ability to do substantial work. Right. So what was left was to determine what was the residual functionality. Yes, sir. For work purposes. Yes, sir. But as to the fact of impairment, you're saying that was established. Yes, sir. That's what your argument is. Yes, sir. That's my argument. And reading the government's response and arguments, the decision, as you recall, doesn't apply in this case. He cited the Albright case and the Lively case as well as I did. And it's my position that Albright case sort of rules in this case as well as the Lively case, and particularly as interpreted by the court of case. As I understand court, it's saying that once an impairment is established to be severe, even at the application level, even though you might not appeal it for administrative hearing, that's still a determination, a final determination that precludes re-litigating that particular impairment. As you go further, it says even if there's an administrative law judge decision, finding a certain sentence to be severe impairments, then you preclude it from re-litigating that as a severe impairment. And that's what happens in this case. And the government's argument is that because the appeal counsel decision reversing or sending them back to the administrative level wasn't a final decision of the commissioner, they're in the position that only a decision by the appeals counsel that ends the case is a final decision. That's not an appeal. And my position is that court controls all these findings of severe impairment have to be considered at any subsequent hearing involving the same claim. And the administrative law judge didn't do that in this case. Let me ask you. Yes, sir. You pointed out at the outset that the first ALJ found six impairments. The second ALJ found six impairments, but there was only one overlap. Only one that was common. Only one common. Yes, sir. So a potential 11 different impairments. Yes, sir. Did you allege all 11 in the first case and the second case? Did you put all 11 in front of both judges? No, sir. That's what the court found based on their consultants reviewing the medical evidence of Mr. Moore. And they came up with different conclusions about impairments. I guess, by the way, it was the same medical evidence before both judges. Yes, sir. For example, dealing with the eye problem, I think the magistrate tried to make comparisons to make them seem as if it was one particular eye problem. He compared that to the back problem and said it was the same, more or less, because it caused the same problems. And the same thing with the anxiety and the depression. In fact, the second ALJ didn't even deal with the depression, even though there was substantial evidence by psychologists and psychiatrists establishing that particular impairment. And like I said, they didn't use the impairments at the third level to determine his residual functional capacity. They didn't use them particularly at the fifth level, where the commissioner has a burden, and to determine these impairments on his ability to work. And they certainly didn't include these impairments as found by Judge Leopold in the hypothetical question proposed to the vocation expert, who said that he was able to do light work because he could do repetitive work. Now, in question, and look at my argument, that whenever the attorney questioned the vocation expert about the mental impairments or restrictions as found by his physician, particularly dealing with working around hazardous stuff, being able to complete a full day's work, being able to concentrate, those particular impairments or restrictions, those were opinioned by his treated physician and also by the consultant physician for the commissioner that impacted on his ability to do work-related activity. In fact, they agreed my hypothetical when I phrased the hypothetical, including those restrictions and limitations as proposed by the experts, and said that he would not be able to do any competitive work. And basically, that's my argument in this case, except the treated physician argument, I think, in addition to the preclusion, would tell him to leave. Thank you. Thank you. We'll hear from the government. Thank you. My name is Mark Epstein. I'm counsel for the Social Security Administration. I want to clear up a couple of things that counsel said. The evidence before the two ALJs is not the same evidence. The evidence before the first ALJ, there was one, there was an application. He filed a subsequent application after Judge Leopold's decision came out. So when we no longer allow people to do that, now you have one application and you have to ride it through. So in this case, the second application was consolidated with the first application. So Judge Allen had a larger case, a larger body of evidence. So it's not exactly the same evidence that they're looking at, so therefore there would be changes in what is found to be a severe impairment. The other thing I want to clear up is – Not so much negated. His conditions improved. And there were some things that happened that, like he had one episode of blindness in one of his eyes. It happened in 2008. Well, by 2013, it had been years since that had happened, so it was not a severe impairment at that point. His anxiety changed also. In the second hearing, he denied that anxiety had an impact on him. So by his own admission, it changed. So you would expect over time some things to get more severe, some things to be relieved. In this case, what you have is somebody whose impairments improved with treatment and conservative treatment at that. So it's not exactly true that it's the same body of evidence is really my point. I also want to clear up the Carter case. Carter didn't change anything. It still relies on there being a final decision of the commissioner, and it applies res judicata only when there's a final decision. We don't have a final decision here. The appeals council vacated the order, vacated the initial decision, sent it back with instructions to further consider the evidence, and we had to because there was a new application that was consolidated. So the appeals council didn't send it back saying you have to start at this point and go on. They said further consider the evidence, consider the impairments, and consider very specific things, the limitations in social functioning, the limitations in concentration, persistence, or pace. So ALJ McAllen followed the appeals council order. He did what he was supposed to do. And the magistrate judge found that he followed the order. The district court judge found he followed the order. What plaintiff is trying to argue is that all of a sudden in a decision that is not a final decision, he wants res judicata to apply. That's the whole point of the administrative process. If we make a mistake, we have an opportunity to correct it and vacate our own decisions. So if we applied res judicata here, we'd be changing the law significantly because you'd be applying the principles of res judicata to a decision that we vacated at his request. Was there any impairment found in the first decision that did not improve based upon looking at the additional evidence that the hearing officer said now is no longer an impairment? No. Are you sure about that? None? Not one of them? Because you said some of them improved, anxiety you mentioned, but you're saying that there was no impairment found the first time, which the other evidence revealed did not improve, but was found subsequent in the second no longer to be an impairment. Well, I don't know that the cataplexy, narcolepsy, and the sleep apnea was a firm diagnosis. It was firmer in the second. So I'm not sure. I don't really know. Isn't that important to understand? Because you're saying that you gave us the outline, I think, very well, the reason why we can't do it because things change, and it was consolidation. But I'm asking you, what is the thing that did not change, did not improve, but was found to be an impairment, but later was found not to be an impairment? You're saying there's nothing wrong. There wasn't anything that... It must be something in the Leopold decision that was worth keeping, at least from Mr. Davis' point of opinion, that was now changed. Well, the anxiety is the one that followed through, and in the second... Well, let me look, because I don't know exactly. Yeah, that's the issue as to the race judicata aspect of it. You say there's nothing, and there's nothing, if that's really the answer. The first decision, there was arthritis, back pain, shortness of breath, blackouts, eye pain, anxiety, and depression. In the second... I don't have the second one with me. Sorry. Okay, you can move on if you don't have the answer to the question. Well, I can tell you that the eye pain went away, or he had that one episode of blindness. His back pain was found... It's the same. It's the same. It continues to be an impairment. Yes. The shortness of breath, I think that improved, and his anxiety, he spoke about at the hearing, and his depression remained the same. So there were... It was more than the... Narcolepsy wasn't an issue. Well, the narcolepsy in the second... Narcolepsy was never firmly diagnosed. What you had was some... That was a diagnosis that the doctor was considering. It's Dr. Nyack. After doing the sleep study, he was considering narcolepsy and saying that there was an indication that cataplexy was an issue, but it ended up that he found that he diagnosed sleep apnea, and, in fact, it's sleep apnea that sent him for this sleep study. And when he treated it with the CPAP machine and had it adjusted to level, he got it at a 4 out of 10. When he used it consistently, there was no more complaints of narcolepsy and no complaints of the cataplexy. So I'm not sure that the narcolepsy actually ever became a final diagnosis. So the plaintiff... Again, what we're saying here is that we didn't have a final decision. We weren't held by it. The second ALJ started out the hearing by saying, we're not bound by this. You know, we're not bound by the prior decisions. He's doing a review de novo, and we've consolidated two applications. So there's nothing about this that's unusual or that we would change the law, which is really what he's advocating. And if we do that, that would be a significant change. And I don't really have anything else. Do you have any questions? Okay, thank you. I think we understand your position. Mr. Davis? Okay, well, again, what was... Hold on. Sorry. About the weight given to the treating physician, was it adequately explained why the treating physician's weight was given or the balance that was done? Yeah, the ALJ talked about he didn't find the treating physician's opinion was supported by his own record. And, yeah, it was talked about. As the clinical findings or being inconsistent or because it was conservatively treated? Which one? Well, all of his treatment was conservative treatment. The clinical indications weren't supporting his. And I have to wonder, one of the physicians who gave an opinion was not a treating physician. He was a consultative examiner. So that opinion was not a treating source opinion. The other opinions, the treating source opinions, the conservative treatment, that was Dr. Nayak, who did the sleep study and diagnosed the CPAP machine or prescribed the CPAP machine. That opinion was found that line that was in one of the reports where he shouldn't work. That was discussed, and that's an opinion on an issue reserved for the commissioner. So that was adequately discussed in the opinion. More weight was given to the non-examining physicians than the treating physicians. Well, because the treating physician's opinions were not found to be consistent with the record. They weren't supported by their record, and the non-examining or the state agency opinions were more in line with the record and supported by the record. So, yeah, the treating physicians were not. Their opinions didn't match the treatment that was in the record. It seems rather thin explanation was given, though. I'm sorry, what was that? The explanation seemed rather thin as to why that weight was given so much to the non-examining physician as opposed to the treating physician. Well, the ALJ talked about them being experts in the field, and he talked about what they reviewed and why he found them consistent. So, you know, we have to consider their considered opinions and experts in the field, so we have to consider them. But normally you give more weight to a treating physician. If it's found to be... First of all, it's got to be an opinion on an issue that's not reserved for the commissioner. It's got to be on nature and severity of the impairment. It's got to be consistent with the record, and it can't contradict other substantial evidence in the record. So there are a series of decisions that we have to make before we do give a controlling weight. And, yes, we do try, and they are supposed to be given more weight unless they don't meet that criteria. If the treating source opinion isn't found to be supported by the record and is inconsistent with other substantial evidence, it deserves less weight. That's all I have. Thank you. Mr. Davis. It's still my opinion because the court of case discuss the difference. Levels of the administrative process, the initial level, the reconsideration level, the AGL level, and the administrative level. And it's my understanding what the court of case held is that even though a case is not a final decision by the appeals counsel, you're still supposed to consider those factual findings for medical impairments at each level. In this case, it's the government's position they're not required to do that. Even in this case here, Your Honor, dealing with the medical, but the mental part of it, even the district court ruled that the calipolepsy diagnosis, even if it constitutes a medical opinion, it ruled that Judge Allen's failure to consider that was harmless. Her position that it was not harmless. And also ruled that the medical records about his impairment for memory deficit and depression regardless of mental capacity that Judge Allen sufficiently addressed that by just discussing it. And I think that's because he did not expressly note in this discussion the report of licensed psychologist, Dr. Links, report that he had extremely low and borderline memory tests. And the court ruled that was harmless. In his opposition, that's a crucial part of the evidence dealing with a mental impairment. And that was a type of limitations and restrictions that the ALJ did not propose to the vocation expert in the hypotheticals and did not consider those particular limitations in making his residual function of capacity. And another particular glaring error is that he formed, the master judge formed his own opinion, which was accepted by the district court judge of matters outside the record. In considering a publication, article in a medical publication that had not been discussed, I refer to an administrative record. And we think that was an error. It was not considered prior to the ALJ considering or talking about it. So that was not part of the record in our opinion. It's our opinion that the Carter case, I think, is definitive. And there was a case out of the Eastern District of North Carolina, I think it was Horton v. Colvin, where Judge Boyle found that in considering those cases I mentioned, the Carter case, the Lively case, as well as the Albright case, that the ALJ is required to consider all findings made in the administrative process. Thank you, Your Honor. Thank you. I'll ask the clerk to adjourn court.
judges: William B. Traxler Jr., Roger L. Gregory, Joseph F. Anderson Jr.